O’Neall, J.
In these cases, I concur in the judgment of the court, by which the motion is dismissed in the first case, and the decree is reversed in the second; but I came to my decision for reasons different from those mentioned by my brother, (Chancellor Dunkin,) in the judgment just read. I still adhere to the doctrine, that a trust, in personalty, is a mere bailment, and that it is executed exactly according to the purposes intended by the donor, and to the extent pointed out in the deed, by the delivery of the possession to the cestui que trust. 1 know this doctrine is supposed to be quite a novelty by some, but I fancy it will be found to be a little more ancient, and to look a little more reasonable, than may have been supposed, when it comes to be examined. Why was it, that the statute of uses was passed'? Was it not by act of law, to unite the legal title to the possession, and thus to prevent a man from holding and enjoying an estate which was forever to be protected from any legal remedy against him % The answer is yes! that was the great object of the statute. It executes the use exactly as the Court of Equity would order it to be done, according to the intent of the parties. But the statute does not reach personal chattels. There never was any necessity that it should. For, unlike land, the legal title and possession never are separated, unless it be for some qualified purpose, not inconsistent with the general property. So too, personalty passed by word of mouth, accompanied by possession, as well as by writing; but land never did. If, then, personalty depends upon possession, when the property is delivered by the trustee to one capable of holding in his or her owti right, and there is no further act of pos *600 session or right to be exercised by the trustee in reference to the period of enjoyment by the cestui que trust, what is to prevent that from being considered an execution of the trust pro tanto? that is, the bailor, the trustee, has delivered the property to the bailee, the cestui que trust, to be held and enjoyed by him or her, until, by the terms of the bailment, the deed of trust, his or her interest is ended. Let me ask — could not the trustee do this by deed ? Every one will say yes. But in personalty, there is no necessity for a deed, possession is enough. Again let me ask, would not equity make a refractory trustee execute his trust, by delivering to his cestui que trust the personalty for the term he or she was to enjoy it'? The Chancellors will say yes. If that be so, is not the act of the parties, voluntarily done, just as good as when forced to be done by the Court of Equity 1 These propositions cannot be denied, but the consequences from them are the difficulty. Let us examine them. May not a cestui que trust, in possession of a personal chattel, maintain trespass against a stranger for an injury done to it'? Every lawyer will say yes. How, if the title be in a trustee? By virtue of the possession. True, but does that not shew that possession is evidence of right ? But I go further, suppose the trustee was to injure the chattels, shoot a negro, for example, in the possession of the cestui que trust, could not the cestui que trust maintain trespass against him ? I have no doubt he could, his possession would be evidence of his right, and his damages would be measured by the extent of his equity, as it is called. It would, at law, be the case of a bailee with an interest suing for an injury done to his possession. Unless you thus resolve the matter, the action would be plain, but the reasen why it was given would be in terra incognita.
Again, suppose the cestui que trust in possession, could the trustee recover from him in trover before his equity, as it is called, his right of possession as I regard it, is ended ? I deny that he could. For to do so, he must shew, not only right of property, but also of possession ; the very deed under which he claims, negatives his right of possession. What is to hinder a law court from regarding and giving effect to the cestui que trust’s right of possession ? *601 When it is in action, and to be enforced by taking the possession from the trustee, it cannot be done. But when the trustee has done what law could not, but which equity would make him do, how utterly absurd it would be, to allow him to undo the very act done voluntarily or by the compulsion of equity, in a suit at law ! If the cestui que trust has thus an ascertained right of possession, must it not be regarded as coming to him from the execution of the trust'? This, I hold, is no new doctrine in Swann vs. Ligon & Rudd, 1 McC. Ch. Rep. 227, the slave was conveyed for the use of husband and wife for life, after the death of either, to the use of the survivor, and after the death of the survivor, to the use of the issue of the mar-riagethe wife survived the husband, who died, leaving issue of the marriage. She sold, in her lifetime; the issue, the remainderman, filed a bill against her alienee, for the preservation of the property; neither she nor the trustee were parties. Defendants demurred, upon the ground that the trustee was not a party. The Court of Appeals, by Judge Colcock, held he was not a necessary party, he had performed the trust. Howl By delivering the slaves to the tenant for life! In Jones vs. Cole, 2 Bailey, 330, the conveyance was to a trustee, in trust for the separate use of a lady about marrying, during life, and after her death, for her children. The court held the trust executed, and the property in the children after the death of tenant for life, by virtue of her possession. In that very case, the doctrine of bailment, as applied to these cases, was first adverted to by Chancellor Johnson, with the concurrence of Chancellor Harper. At the same time, the case of Watson vs. Pitts was tried, 2 McMull. 298, note. And there, notwithstanding possession in the cestui que trust, it was held that the trustee might maintain trespass or trover against a stranger. Why! Because, as bailor and bailee, he or the cestui que trust might maintain the action. In Gist vs. Porcher, and Pringle vs. Allen, 1 Hill Ch. 135, the doctrine of an executed trust in personalty was maintained, and the life estate of the cestui que trust sold under execution. The same thing occurred in the Court of ten, in the case of Fogarty vs. Hubbell, 3 Hill, 30, and in Ford vs. Caldwell, Id. 248, in the Law Court of Appeals. After *602 such an array of authority and reason, I do not see any propriety in overturning them all, for the sake of sending an execution creditor into chancery to get his money out of some unfettered trust estate. Such a course will be, to give away the meat and keep the shell.
I see, in looking into 2d Equity Dig. 483, sec. 7, that it is there said to have been decided, in Jones vs. Langhorn, 3d Bibb. 453, “ Slaves conveyed in trust, are subject to execution for the debts of the cestui qua trustthis seems to square very well with our own cases. But it is utterly inconsistent with law to say, that one has an absolute sole right to the possession of personal chattels, and yet the sheriff cannot seize them in execution. The execution simply transfers the possession to the sheriff, with what-, ever right the defendant has, and this he sells. But it is supposed there is some necessity, that equity should superintend the sale, to protect ulterior equities. No such necessity can exist. If there be any danger, let the remain-dermen or trustee claim the extraordinary jurisdiction to protect their interest. I have no idea of cramming every case into equity, on account of the greater convenience of the remedy. We may use a stronger and more direct remedy at law; but in the main, it suits the people much better than the more uncertain and expensive remedy in Equity. It is, however, said, there cannot be a partial execution of a trust. I admit that in one sense, but notin that in which it is used here. It is true, the trustee cannot partially execute the estate of cestui que trust, but, to the extent of his interest, he may execute it. As under the statute, the use for the life of the cestui que use is executed, Saunders on Uses and Trusts, 112, 113. So in personalty, possession would have the same effect. The trust for the remainderman abides in the trustee.
So much for the principle which I suppose these cases are to overturn. In the cases themselves, according to the principles w'hich I have maintained, there is no difficulty. In both, the trust is partially for a married woman incapable of acting sui jut is; something still remains to be done by the trustee, shewing that the possession' is not absolute in the husband. Both are ante-nuptial settlements. In the first case, the property may be sold by the trustee *603 and the cestui que trusts, and the proceeds invested in other property. This shews the possession was to be permissive only — a mere tenancy at will, if we can properly use such terms about personalty. In the other case, at the death of each, he is to assign, transfer, and set over, the property to the next one entitled. This, also, qualifies the possession. But it is said that this conflicts with Ford vs. Caldwell. It does not so seem to me. There the settlement was post-nuptial — the possession was never changed, it was in the husband all along, there was nothing to be done by the trustee for the life of the husband. His pos-sesion was absolute for his life; and when he sold the slaves I do not see how the trustee could recover them from his alienee. So far as he and (he trustee were concerned, the trust was executed, and that was all that cnse decided.